IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 19-152-1,6,12 |
| | : | |
| JESUS FELICIANO TRINIDAD | : | |
| DEWAYNE QUINONES | : | |
| MAYCO ALVAREZ-JACKSON | | |

## MEMORANDUM

**Chief Judge Juan R. Sánchez**                                   **January 10, 2023**

On October 17, 2022, a jury convicted Defendants Jesus Feliciano-Trinidad, Dewayne Quinones, and Mayco Alvarez-Jackson of various crimes associated with their participation in a drug trafficking organization in the City of Reading, Pennsylvania. Following the jury's verdict, all three Defendants filed motions for judgment of acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33. They argue that there is insufficient evidence to support their convictions, or, in the alternative, that the interest of justice requires a new trial. Because the evidence presented at trial was sufficient to support the jury's verdict, the Court finds Defendants are not entitled to judgments of acquittal or a new trial; their motions will be denied.

## BACKGROUND

On March 13, 2019, a grand jury returned an indictment charging twelve individuals, including Trinidad, Quinones, and Jackson, with participation in a violent drug trafficking organization ("DTO") in the City of Reading. Through four superseding indictments, the twelve defendants were charged with drugs, firearms, kidnapping, and homicide offenses in relation to the DTO's activities. Although the majority of the charged defendants entered guilty pleas,

Trinidad, Quinones, and Jackson proceeded to trial, where a jury convicted them of numerous counts.

Trinidad was convicted of Counts 1 (conspiracy to traffic drugs), 2 (conspiracy to kidnap Hector Gonzalez-Rivera), 3 (kidnapping resulting in death of Hector Gonzalez-Rivera), 4 (using and carrying a firearm during and in relation to a drug trafficking crime on January 24, 2018), 5 (murder in the course of using and carrying a firearm during and in relation to a drug trafficking crime on January 24, 2018), 6 (using and carrying a firearm during and in relation to a drug trafficking crime on January 28, 2018), 7 (murder in the course of using and carrying a firearm during and in relation to a drug trafficking crime on January 28, 2018), 8-9 (drug distribution on February 3 and 16, 2018), 10 (using and carrying a firearm during and in relation to a drug trafficking crime on February 17, 2018), 11 (drug distribution on February 26, 2018), 12 (possession of a firearm in furtherance of a drug trafficking crime on February 26, 2018), 13 (conspiracy to kidnap R.G.E.), 14-15 (drug distribution on March 6 and 13, 2018), 16 (drug distribution on March 16, 2018), and 19-20 (maintaining a drug premises). Quinones was convicted of Counts 1, 6, 7, 10, 12, and 13. Jackson was convicted of Counts 2, 3, 6, and 7.

After the close of the Government's case, all three Defendants filed motions for judgments of acquittal under Rule 29 asserting the Government produced insufficient evidence to support a conviction, which the Court denied. Following the jury's verdict, Defendants again moved under Rules 29 and 33 for acquittal and/or new trial, challenging the sufficiency of the evidence on various Counts and alleging their convictions were a "miscarriage of justice." *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005).

**LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 29, a court must enter a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In evaluating a sufficiency of the evidence challenge pursuant to Rule 29, a district court must "review the record in the light most favorable to the [Government] to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *United States v. Wolfe*, 245 F.3d 257, 262 (3d Cir. 2001)). The Court may not weigh the evidence or the credibility of witnesses. *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). Instead, it "must uphold the jury's verdict unless no reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt." *United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019).

In determining whether a new trial is warranted pursuant to Rule 33 on the ground that the jury's verdict is contrary to the weight of the evidence, in contrast to Rule 29, the Court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). "Although the standard of review for a motion for a new trial is broader than that for acquittal, motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Crim*, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008). The Court can order a new trial on this basis "only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *Johnson*, 302 F.3d at 150 (citations and internal quotation marks omitted).

**DISCUSSION**

Each Defendant challenges his conviction on several Counts under Rule 29, Rule 33, or both. The Court considers the evidence supporting each Count in turn, to determine whether there was a sufficient basis for a rational factfinder to convict the Defendant on that Count, or whether the conviction is against the great weight of the evidence.

**Trinidad**

Trinidad claims the Government did not introduce sufficient evidence to support his conviction on Count 3 for kidnapping resulting in the death of Hector Gonzalez-Rivera. He challenges the causation element of this crime, arguing that no juror could reasonably have found that, but for his actions, Gonzalez-Rivera would have died. Trinidad Mot. 4, ECF No. 546.

At trial, the parties disputed the scope of causation under 18 U.S.C. § 1201 within the context of jury instructions. In agreed-upon language, the Court instructed the jury as follows:

> And in order to find that that defendant's acts resulted in the death of Hector Gonzalez-Rivera, you must find that the government proved that Hector Gonzalez-Rivera is dead, and that his **death resulted from the willful and intentional conduct of the defendant**. In order to establish that the defendant's conduct resulted in the death of Hector Gonzalez-Rivera, the government must prove beyond a reasonable doubt that but for the defendant's actions, Hector Gonzalez-Rivera would not have died. However**, the government does not have to prove that the defendant intended to kill Hector Gonzalez-Rivera**.

N.T. 10/18/22, at 104:12, ECF No. 553 (emphasis added). There was extensive evidence introduced at trial that Trinidad intentionally kidnapped Hector Gonzalez-Rivera, and that his willful acts led to Gonzalez-Rivera's death. Thus, even without direct testimony that Trinidad ordered the murder,[1] the jury had sufficient evidence to convict Trinidad of Count 3.

For example, the Government elicited testimony that Trinidad was furious with Gonzalez-Rivera for failing to follow orders to shoot up a rival drug dealer's house. N.T. 9/22/22, at 59:13-

---

[1] The Government did introduce this evidence, through Yomar Velazquez-Figueroa. N.T. 10/11/22, at 91:20-92:8.

4

22, ECF No. 538. After being alerted to Gonzalez-Rivera's whereabouts, Trinidad drove to pick him up, ordered him to get in the car, and brought him to a drug house where he beat and taunted him, saying he was going to die. *Id.* at 59:20-61:21; 62:5-21; 65:12-14; 73:12-74:12; N.T. 10/11/22, at 86:19-97:15; 146:6-10, ECF No. 549. He ordered a confederate to watch Gonzalez-Rivera until he "decided whether to let him go or not." *Id.* at 90:19-92-2. Trinidad ultimately concluded that Gonzalez-Rivera could not be left alive in case he snitched or sought revenge, and chose to kill him by lethal injection. *Id.* at 91:18-92:8. He rewarded his compatriots for completing the job. *Id.* at 96:3-14. After the fact, Trinidad boasted to multiple people that he had killed someone who had stolen from him. N.T. 9/26/22, at 84:6-12, ECF No. 530; N.T. 9/29/22, at 112:14-25, ECF No. 533; Gov't Ex. W188. There was more than enough evidence for the jury to find that Trinidad intentionally kidnapped Gonzalez-Rivera, who died as a result of these intentional acts.

Trinidad also argues he must be acquitted of Count 5—murder in the course of using, carrying, and discharging a firearm during and in relation to a drug trafficking crime—for the same reason as Count 3: lack of intention. Trinidad Mot. 4, ECF No. 546. However, as detailed above, the jury had sufficient evidence to find that Trinidad's willful acts caused Gonzalez-Rivera's death. Multiple witnesses shared how Trinidad spoke about Gonzalez-Rivera's death, bragging that he killed him for disobeying his orders and threatening to do the same to others. N.T. 9/26/22, at 84:6-12, ECF No. 530; N.T. 9/29/22, at 112:14-25. Trinidad's own words proved his mens rea and of intent, rendering his present argument meritless.

Finally, Trinidad contends the Government did not introduce sufficient evidence for the jury to find that he acted with malice aforethought in the quadruple homicide charged in Count 7. Trinidad Mot. 4, ECF No. 546. He claims the events of January 28, 2019 were unplanned and

unintentional. *Id.* In his instructions to the jury, the Court defined "malice aforethought" as killing another person "deliberately and intentionally" or acting "with callous and wanton disregard for human life." N.T. 10/18/22, at 89:8-11, ECF No. 553. Further, premeditated killing was defined as one that happens when the perpetrator is "fully conscious of the intent." *Id.* at 89:16-21. The Government introduced sufficient evidence for a rational juror to find that Trinidad's acts were done with both premeditation and malice aforethought.

Pedro Sanchez-Laporte testified that the initial purpose of the meeting at 123 S. 3rd Street, as he saw it, was to ask if Trinidad wanted to take over his drug-selling spot, but he feared violence from the outset. N./. 9/26/22, at 70:3-9; 73:11-15; 87:16-8/8:1. And while Trinidad notes that he repeatedly said that he was not going to do anything to the victims, Trinidad Mot. 5, ECF No. 546, he said this while laughing in Sanchez-Laporte's face. N.T. 9/26/22, at 94:10-16. During a break in the shooting, Sanchez-Laporte pleaded with Trinidad to stop, but Trinidad refused to leave any witnesses alive, saying "get out of the way or you'll be [next]." *Id.* at 114:15-23; N.T. 10/6/22, at 95:20-22, ECF No. 543; N.T. 10/11/22, at 106:13-16. As with the murder of Hector Gonzalez-Rivera, Trinidad boasted about the quadruple homicide afterwards. N.T. 9/29/22, at 85:2-22; 95:4-11. All of this evidence supports the finding that Trinidad was fully conscious of his choice to shoot the victims and did so with a "wanton disregard for human life." N.T. 10/18/22, at 89:16-21. Consequently, his Rule 29 motion as to Count 7 will be denied.

Trinidad cites the language of Rule 33 in requesting the Court "vacate any judgment and grant a new trial in the interest of justice," but he does so without any facts or analysis of his case. Trinidad Mot. 6, ECF No. 546. A bare recitation of the law, without anything more, does not entitle a movant to relief. Trinidad's motion under Rule 33 will thus also be denied.

**Quinones**

Quinones alleges no rational trier of fact could have found him guilty of Count 1, conspiracy to distribute controlled substances, because the Government failed to introduce sufficient evidence proving that he was a member of an agreement to distribute drugs. Quinones Mot. 2, ECF No. 556. An agreement to work together as part of a conspiracy may be proven entirely through circumstantial evidence. *United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016). The Third Circuit has explained that it is reasonable to infer an agreement to conspire from intentional conduct that furthers the aims of the conspiracy. *United States v. McKee*, 506 F.3d 225, 241 (3d Cir. 2007). The evidence at trial demonstrated that Quinones acted in furtherance of the goals of the DTO, establishing his participation in the agreement to traffic controlled substances.

Quinones was known to spend time at one of the DTO's drug-selling spots, and was aware of the territory dispute between the DTO and the later-victims weeks before the quadruple homicide. N.T. 9/26/22, at 58:25-59:20, 61:12-62:3; 155:24-156:3; 163:2-4. Such knowledge also supports a finding of guilt. *See United States v. Klein*, 515 F.2d 751, 753 (3d Cir. 1975) ("It must be shown that . . . a person has knowledge of the conspiracy's illicit purpose when he performs acts which further that illicit purpose."). Quinones participated in the shooting on January 28, 2018; indeed, he fired the first shot. N.T. 9/26/22, at 110:4-9; N.T. 9/29/22, at 114:14-18; N.T. 10/11/22, at 95:17-19. Thereafter, Quinones acknowledged his role, saying "fuck them. It is what it is," in reference to the victims. N.T. 9/29/22, at 113:11-114:7; 115:19-116:4. His participation in the Marion Street shooting and attempted kidnapping of R.G.E., both motivated by animosity between rival drug dealers, further establishes his role in the conspiracy. *See* N.T. 9/29/22, at 116:5-14; 118:3-5; 126:3-8; N.T. 10/11/22, at 123:11-23. These events all occurred to further the aims of the DTO in expanding their territory; Quinones' involvement is sufficient to show his agreement in the conspiracy. *McKee*, 506 F.3d at 241.

This Court's role in deciding a sufficiency of the evidence challenge under Rule 29 is to uphold the jury's verdict "as long as it passes the 'bare rationality' test." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 432 (3d Cir. 2013). Because the jury's conclusion that Quinones was a member of the DTO is rational based on the evidence provided, its finding of guilty must be upheld. Further, as there was sufficient evidence to find Quinones guilty of conspiring to distribute controlled substances even before the quadruple homicide, there is no cause to disturb his convictions on those Counts for which Count 1 is a predicate offense. Therefore, Quinones' motion for acquittal on Counts 6, 7, 10, and 12, will also be denied. Quinones Mot. 2-3, ECF No. 556.

Quinones also claims a new trial is required on these Counts. Even evaluating the evidence of Quinones' participation in the DTO in the neutral manner required under Rule 33, however, it is clear this is not an "exceptional case" where a new trial is warranted. *Gov't of Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987). The weight of evidence presented at trial, discussed above, supports Quinones' conviction on Counts 6 and 7. Further, because the "arguments regarding the denial of his new trial motion essentially rehash those presented in support of his insufficiency of the evidence claim," there is no reason to believe that a "miscarriage of justice" occurred. *United States v. Shaker*, 827 F. App'x 204, 208 (3d Cir. 2020) (quoting *Johnson*, 302 F.3d at 150). Quinones' motion under Rule 33 will be denied.

Second, Quinones contends the Government failed to introduce sufficient evidence showing he was a member of an agreement to kidnap R.G.E., and thus he must be acquitted of Count 13 pursuant to Rule 29. Quinones Mot. 3, ECF No. 556. Again, this argument is meritless. The evidence at trial showed that Trinidad wanted to kidnap R.G.E. because he owed money to Freddy Lee, one of the DTO's suppliers. N.T. 10/11/22, at 121:2-3; 121:15-17. Trinidad and

Quinones were driving around looking for R.G.E., with Sharon Melendez-Ortiz relaying information on the victim's whereabouts. N.T. 10/6/22, at 108:24-109:2; 110:1-5; 115:21-22; N.T. 10/11/22, at 123:11-23. When law enforcement, who had been listening to these conversations, was forced to intervene to prevent the kidnapping, Quinones was in the car with Trinidad and Melendez-Ortiz. N.T. 10/11/22, at 124:2-7; 126:8-10; Gov't's Ex. 1232.

If a rational jury *could have* found proof of guilt, its finding must be upheld, even if another "might not have made the same decision." *McKee*, 506 F.3d at 232-33. On this record, a jury could reasonably conclude Quinones had agreed to the objective of kidnapping R.G.E. His motion for acquittal will be denied.

**Jackson**

Jackson moves for acquittal of Counts 6 and 7 (using and carrying a firearm during and in relation to a drug trafficking crime, and murder in the course of using and carrying a firearm during and in relation to a drug trafficking crime) on the basis that the Government failed to prove the predicate offense of conspiracy to traffic drugs. Jackson Mot. 3, ECF No. 584. While Jackson was not charged in Count 1, the jury still heard sufficient evidence to conclude Jackson was a member of the DTO conspiracy.

First, in January of 2018, Jackson set up a meeting between Trinidad and Julio Caceres-Gotay, to force the latter to begin selling drugs for the former. N.T. 9/22/22, at 44:2-19; 45:1-11. Second, in the same way as Quinones and as detailed more fully below, Jackson participated in the violence in early 2018 which stemmed from territory disputes between rival drug dealers. *See, e.g.*, *Id*. at 60:5-12; N.T. 9/26/22, at 91:9-92:10. His participation in these events, furthering the aim of the DTO, is sufficient evidence from which the jury could infer his agreement in the conspiracy. *McKee*, 506 F.3d at 241. Third, Jackson was close with Trinidad and other members

9

of the conspiracy; for example, Trinidad's girlfriend paid his bail bond on January 13, 2018. N.T. 10/6/22, at 197:3-8; Gov't Ex. 1303A. An "association with, and close proximity to, other conspiracy members" supports an inference of agreement. *United States v. Claxton*, 685 F.3d 300, 311 (3d Cir. 2012). The jury's conclusion that Jackson was a member of the DTO was therefore rational, and his motion for acquittal on Counts 6 and 7—which rely on his participation in a conspiracy to traffic controlled substances—will be denied.

Jackson further contends that his convictions on Counts 6 and 7 must be vacated in the interest of justice under Rule 33. Jackson Mot. 4, ECF No. 584. His first argument—that the Government failed to prove the predicate offense of conspiracy to traffic drugs—is without merit, as described above. *Id.* at 5. Even under the less deferential Rule 33 standard, the jury's conclusion that Jackson was a member of the DTO was not against the great weight of evidence. Second, Jackson's claim that there was no evidence of his active participation in the quadruple murder is patently untrue. *Id.* at 6. While no witness testified that they directly saw Jackson shoot, he brought weapons to 123 S. 3rd Street, and was seen holding a gun both before and after the shooting began. N.T. 10/11/22, at 99:10-22; 101:21-25; N.T. 9/26/22, at 102:20-25; 113:4-19. Evidence at trial showed that multiple bullet and cartridge cases recovered at the scene matched the gun that Jackson was holding. N.T. 10/12/22, at 92:8-18; 104:20-24; 106:18-21. His behavior after the fact also suggests participation in the shooting: a visibly upset Jackson told Julio Caceres-Gotay they had "left four people laid out in the apartment," N.T. 9/22/22, at 82:20-83:7, and he later fled to Puerto Rico because "his situation was very hot." *Id.* at 89:2-15. In assessing the Government's case as a whole, it is clear there has been no miscarriage of justice. *See United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2002). His motion for a new trial will be denied.

Finally, Jackson contends his conviction on Count 2 for conspiracy to commit kidnapping, must be overturned or vacated because the Government failed to produce evidence that he was a member of an agreement to kidnap Hector Gonzalez-Rivera. Jackson Mot. 4, ECF No. 584. This argument also fails. Jackson was present when Trinidad ordered Gonzalez-Rivera to shoot at a rival dealer's house, N.T. 9/22/22, at 58:10-21, and found out that his order was not followed, *id.* at 59:13-60:11. Jackson and Trinidad went together to pick up Gonzalez-Rivera and take him back to the drug spot, where they both beat and abused him. N.T. 9/22/22, at 60:20-23; 62:1-23; 65:12-14; 69:19-24; 73:14-23; 74:9-12; Gov't's Ex. 20OO. The next day, Jackson told a confederate that they had left Gonzalez-Rivera confined in the basement. N.T. 9/22/22, at 79:15-80:3. From this evidence, a juror could rationally conclude that Jackson was a member of the agreement to kidnap Gonzalez-Rivera. His motion for acquittal of Count 2 will be denied. Jackson's brief mention of a Rule 33 challenge to Counts 2 and 3 will be denied for the same reason, as well as for lack of any supporting facts or analysis. *See* Jackson Mot. 4, ECF No. 584.

**CONCLUSION**

In sum, the Government presented sufficient evidence from which a reasonable jury could convict the Defendants of the foregoing charges. No miscarriage of justice has occurred. The Court therefore will deny Defendants' motions for judgment of acquittal or a new trial.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.